IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 06-cr-30013-MJR |
| | ) | |
| HAROLD M. GRIFFITHS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

**REAGAN, District Judge:**

This matter is now before the Court on Defendant Harold Griffiths' motion to suppress statements (Doc. 21).

**A.     Factual and Procedural History**

On January 17, 2006, the Government filed a criminal complaint against Defendant Harold M. Griffiths (*see* Doc. 1). In that complaint, Robert Nosbisch – who has been employed as a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") since 1991, and currently holds the position of Senior Special Agent assigned to the Fairview Heights, Illinois field office – alleges that, on December 19, 2005, agents of the ATF received information that Griffiths, a medical doctor, may have unlawfully possessed machineguns. *Id.*

Specifically, the complaint alleges, on December 19, 2005, John J. Yard told agents of the ATF that Griffiths had loaned him a Colt Brand, AR-15 rifle that had been illegally converted for use as a fully automatic machinegun. According to the complaint, on October 12, 2005, Yard fired that machinegun in fully automatic mode before subsequently returning it to Griffiths at the residence then occupied by Griffiths in Glen Carbon, Madison County, Illinois.

In response to this information, on December 22, 2005, agents of the ATF, along with

1

other members of law enforcement, proceeded to Griffiths' current residence in Spaulding, Illinois. On that date, according to the Government's complaint, Griffiths gave Nosbisch and the other officers his consent to search his residence by signing a written consent to search form. The ATF's search of Griffiths' residence resulted in the seizure of, among other items, a Colt Brand, Model AR-15 SP1, .223 caliber rifle bearing serial number SP89113, which Griffiths allegedly stated had been illegally converted to a fully automatic firearm.

According to the complaint, Griffiths also told Nosbisch that he would agree to a videotaped interview. During the course of that videotaped interview, Griffiths related to Nosbisch several details regarding his ownership of the machinegun, his knowledge of its illegality, and his transfer of the machinegun to Yard. At the conclusion of the interview, Griffiths voluntarily abandoned the machinegun and other firearms to the ATF by executing a written notice of abandonment of property.

Based on these facts, on January 19, 2006, the Government filed an indictment (*see* Doc. 7) charging Griffiths with one count of possessing a machinegun, in violation of **18 U.S.C. § 922(o)(1).**

On May 25, 2006, Griffiths filed a motion to suppress evidence (Doc. 21), asking this Court to suppress the videotaped statements made by Griffiths to Nosbisch, as those statements purportedly were elicited in violation of ***Miranda v. Arizona,* 384 U.S. 436 (1966)** (*see* Doc. 21, p. 1). The Government filed its response to Griffiths' motion on June 29, 2006 (Doc. 30).

On August 17, 2006, this District Judge conducted a hearing on Griffiths' motion to suppress. Agent Nosbisch appeared as a witness, testimony was adduced and arguments were presented. At the conclusion of that hearing, this Court took Griffiths' motion under advisement and afforded the parties leave to file supplemental briefs on this issue. On October 11, 2006, the Government filed a supplement response (Doc. 41). This matter being fully briefed and argued, the Court now rules as follows.

2

B.     Analysis

In his motion to suppress, Griffiths moves this Court to suppress statements made by Griffiths to Nosbisch during the videotaped interview Nosbisch conducted at Griffiths' home on December 22, 2005. Griffiths argues that the interview was the functional equivalent of a custodial interrogation because he was surrounded by armed police officers and was not free to move about his house or leave his kitchen table (*see* Doc. 21). Consequently, Griffiths argues, Nosbisch's failure to give Griffiths *Miranda* warnings before taking his statements renders the elicited statements inadmissible.

Custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." ***Miranda v. Arizona,* 384 U.S. 436, 467 (1966).** If a person is in custody, law enforcement officers may not interrogate that person unless they have told the person that he has the right to remain silent, that any statement he makes may be used against him, and that he has the right to an attorney, either retained or appointed. ***Id.* at 444**.

In the present case, it is undisputed that Nosbisch did not give Griffiths *Miranda* warnings before conducting his interview. Moreover, neither party disputes that Griffiths was questioned extensively by Nosbisch. Accordingly, this Court need only determine whether that questioning occurred while Griffiths was "in custody"(such that *Miranda* warnings were necessary) or whether Griffiths' statements were elicited during a voluntary interview.

According to the Seventh Circuit, custody "implies a situation in which the suspect knows he is speaking with a government agent and does not feel free to end the conversation; the essential element of a custodial interrogation is coercion." ***United States v. Martin,* 63 F.3d 1422, 1429 (7th Cir.1995).** A "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person

3

being questioned." *Stansbury v. California,* **511 U.S. 318, 323 (1994)**.  In other words, "the only relevant inquiry is how a reasonable man in the suspect's shoes would have understood his situation." *Berkemer v. McCarty,* **468 U.S. 420, 442 (1984)**.

"In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." *Stansbury,* **511 U.S. at 322**, *quoting California v. Beheler,* **463 U.S. 1121, 1125 (1983)**. In the case at hand, this Court's examination of all the surrounding circumstances reveals that Griffiths was not in the investigating agents' custody during the interview in question.

In arguing that he was in custody while being interviewed by agent Nosbisch, Griffiths is faced with a formidable obstacle – the videotaped recording of that interview.  That recording is devoid of any compelling evidence indicating that Griffiths felt that he was not free to end his conversation with Nosbisch or that there was any degree of coercion by the agents. On the contrary, the interview recording is rife with evidence that belies this argument.

For example, near the beginning of his interview, Griffiths was informed that he was not under arrest, and it was noted that Griffiths had voluntarily given his consent and "basically [had] been very cooperative" (Defendant's Exhibit # 1, Interview Transcript ("Int. Tr."), p. 7, ln. 2-16).[1]   In response, Griffiths motioned to the camera and stated: "I'm doing all of this voluntarily." *Id.*  Moreover, directly after that statement, Nosbisch stated: "I know—because you know, we're in a lot of different situations where people feel that maybe they're being coerced, and I want them to know that you're not being coerced." *Id.*  Griffiths replied: "No, I'm not—in no way whatsoever." *Id.*

---

[1] The videotape was transcribed and a "DVD" of the interview, as well as the transcription, was made part of the record in this matter.

4

It is further clear from a review of the videotaped interview that Griffiths was free to move around his house, was allowed to tend to his dogs, and was even allowed to answer his phone and make phone calls (*See* Int. Tr., p. 40, ln. 18 - p. 41, ln. 5; p. 54, ln. 16 - p. 55, ln. 7 (Griffiths being allowed to move around his house to feed his dogs); p. 56, ln. 18-22 (Griffiths being allowed to call his employer to tell his employer he would be late); p. 77, ln. 3 (Griffiths answers his phone)).

Moreover, as the interview progressed, Griffiths repeatedly acknowledged that he was being treated politely and never indicated in any manner that he felt he was being coerced into giving his statements. For instance, when Nosbisch told Griffiths that he hoped he and the other agents had been respectful to Griffiths and his property, Griffiths replied: "You're doing your job. You're doing it very professionally, very nicely, very politely. I can ask for no more" (Int.Tr., p. 67, ln. 8- p. 68, ln. 9). Later on in the interview, Nosbisch told Griffiths: "[Y]ou've been very polite, very respectful. I hope you feel we have," to which Griffiths replied: "Yes, sir, I do." *Id.* at p. 117, ln. 21-23.

Additionally, Nosbisch's statements to others besides Griffiths echoed what Nosbisch had assured Griffiths – that Griffiths was not under arrest. At one point during the interview, Nosbisch answered Griffiths' phone to speak with John Yard. During that conversation, Nosbisch told Yard: "like I told [Griffiths], you're free to walk around, use the bathroom. Obviously we have to go with him–not to the bathroom, but we have to go with him if he's going to walk in the house. 'Cause he's not under arrest- it ain't that type of situation. Okay? He is not—because he can leave at any time. He understands that. No, I have not advised him of his rights, because he's not under arrest. I mean he's not. I mean, he's being very voluntary about everything." *Id.* at p. 81, ln. 7-17. Notably, Griffiths – who almost certainly heard this conversation – did not object to Nosbisch's statements nor did he even indicate through his body language any disagreement with Nosbisch's characterization of his situation.

Finally, near the conclusion of the interview, it is again clear that Griffiths understood

5

that his interview was voluntary. Looking at the clock on Griffiths' wall, Nosbisch told Griffiths: "[. . .] If we're running short on time or getting close, please let me know." *Id.* at p. 109, ln. 17-22. In response, Griffiths indicated that he had to leave for work, but told the agents "You're all welcome to stay." *Id.* Shortly thereafter, the interview was concluded.

The statements and behavior of Griffiths and agent Nosbisch *displayed* in the videotaped interview strongly refute Griffiths' argument that a reasonable person in his situation would not feel free to end the conversation and would feel coerced into giving the interview. ***See Martin,* 63 F.3d at 1429.** Perhaps even more detrimental to Griffiths' position, however, is what the videotape did *not* display. The videotape is utterly devoid of any substantially nervous behavior on the part of Griffiths, any suspicious body language or statements by any of the individuals involved, or any other element that would in any way indicate that Griffiths felt coerced into giving his statement.

Perhaps recognizing this fact, at the hearing held on this issue, Griffiths argued that, in spite of what occurred in the interview, agent Nosbisch approached Griffiths as a suspect and essentially intended for the interview to be a custodial interrogation, wherein Nosbisch could elicit from Griffiths incriminating statements. Even if this were true, as this Court has already noted, a "determination of custody depends on the *objective* circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." ***Stansbury,* 511 U.S. at 323 (emphasis added)**. This rule applies not only to the inception of the interview, but continues to apply throughout the course of the interview: "[an officer's] evolving but unarticulated suspicions do not affect the objective circumstances of the interrogation or the interview and thus cannot affect the *Miranda* custody inquiry." *Id.* **at 324.** Whether Nosbisch intended the interview to be a custodial interrogation, the *objective* behavior of the parties fails to support such a finding.

Griffiths further argued that circumstances occurring off-camera – such as the fact that

6

Griffiths apparently was escorted when moving throughout other areas of his house and the fact that there were at least six officers present in the house – indicate that he was in custody. This Court disagrees.

As agent Nosbisch testified during the suppression hearing, several officers were needed in order to efficiently search Griffiths' residence[2] and most, if not all, of those officers had their weapons concealed. Moreover, as Nosbisch testified, Griffiths' being escorted through certain areas of the house was a normal precautionary measure to ensure their and Griffiths' safety – as there were several guns, both loaded and unloaded, throughout Griffiths' residence – and to avoid the possible destruction of evidence. This Court found Nosbisch's testimony on these issues consistent and credible. Nosbisch's testimony remained uncontradicted and un-refuted by Griffiths regarding any material point. In addition, having witnessed Agent Nosbisch's non-verbal behavior while testifying – his responses and reactions to questioning, his facial expressions, attitude, tone of voice, eye contact, and body posture – this Court did not observe any non-verbal cues that would indicate Nosbisch was being untruthful regarding the purpose and behavior of the investigating officers.

Further detrimental to Griffiths' position is the fact that "totality of all the surrounding circumstances" regarding a custodial interrogation includes the characteristics of the accused – including the accused's age, education, physical condition, mental health, and criminal experience ***Schneckloth v. Bustamante,* 412 U.S. 218, 226 (1973); *Withrow v. Williams*, 507 U.S. 680, 693-694 (1993);*Payne v. Arkansas*, 356 U.S. 560, 567 (1958).** During his interview, Griffiths admitted that he had worked as a reserve police officer for a period of approximately ten years (Int. Tr., at p. 12, ln. 7-11) and had received roughly 500 hours of police training. *Id.* at 14, ln. 23-24. In this capacity, Griffiths admitted, he became experienced at advising suspects of their constitutional rights and had received

---

[2] Griffiths does not challenge having consented to the search of his residence.

7

training regarding the laws relating to questioning of suspects and advising arrested suspects of their rights. *Id.* at 17, ln. 5-15; p. 17, ln. 16 - p. 18, ln. 2.  In light of Griffiths' training and experience, this Court seriously doubts that Griffiths would have freely acknowledged that he was not under arrest (Int. Tr., p. 7, ln. 2-16) if he indeed felt that he was in custody.  The Court further disbelieves that Griffiths would have repeatedly asserted and indicated that his statements were voluntary (*Id.* at p. 7, lns. 2-16; p. 109, ln. 17-22)  if he indeed felt he was being coerced. ***See, United States v. Spruill*, 296 F.3d 580, 589 (7$_{th}$ Cir. 2002) (experience in criminal justice system relevant to understanding of *Miranda* warnings); *United States v. Bradley*, 234 F.3d 363, 366 (8$_{th}$ Cir. 2001)(whether a defendant had been previously arrested and was aware of the protections afforded to criminals by the legal system is to be considered in determining if consent is voluntary).**

For all these reasons, the Court finds that the record fails to indicate that Griffiths was in custody when he gave his videotaped statements.  Accordingly, Nosbisch was not required to give to Griffiths *Miranda* warnings and the interview of Griffiths conducted in question did not violate the principles set forth by *Miranda,* **384 U.S. 436.** *See United States v. Shlater,* **85 F.3d 1251, 1256 (7th Cir. 1996);** *United States v. Saadeh,* **61 F.3d 510, 519 (7th Cir. 1995).**  Therefore, the Court **FINDS** that the statements given by Griffiths during his videotaped interview are admissible at trial and **DENIES** Griffiths' motion to suppress (Doc. 21).

       **IT IS SO ORDERED.**
       **DATED this 27th day of October, 2006.**

                                                                     **s/ Michael J. Reagan**
                                                                     **MICHAEL J. REAGAN**
                                                                       **United States District Judge**